Good morning, your honors. May it please the court. Richard Lucero for the petitioner. Ms. Domingo, if I may reserve a couple of minutes. You're Mr. Lucero, right? Yes, your honor. Very well. If I may reserve two minutes for rebuttal. Your honor, this matter involves an issue of alienage in the context of removal proceedings. Who has the burden to show alienage and what's necessary to meet that The petitioner, when she was in removal proceedings, asserted that she was born in the United States. She was moving the court to terminate removal proceedings against her in support of her argument that she was born in the United States. She submitted evidence in the form of oral testimony through her grandmother. She submitted sworn affidavits by family members, all asserting that she was born in the United States. The immigration judge held that the government had met their burden to show that the petitioner was born in Guatemala. The petitioner then appealed the case to the Board of Immigration. The Board of Immigration affirmed the immigration judge's decision. The matter was then appealed to the Ninth Circuit. At that point, this court transferred this matter to the district court. Before the district court, there was testimony taken, there was discovery taken, and the government moved to file the motion for summary judgment. The district court ruled in favor of the government. That case was then transferred back to this court. So here we are. So the petitioner asserted in his brief that the government has the burden to show, by clear, convincing, and unequivocal evidence, that the petitioner, in fact, was born in a different country. The petitioner asserts that through the evidence that she provided through oral testimony, through the affidavits, that she, in fact, was— Let me just kind of go back to change a little bit here. Doesn't the law provide—it's almost like a McDonnell-Douglas analysis. You've got the government first has the obligation by prima facie evidence to show that, in this case, the petitioner was born elsewhere. The government produced a birth certificate showing that she was born in another country. Then the burden shifts to your client. Your client then produced a declaration of two aunts who were not there. They heard it was all secondhand, arguably hearsay. Then you have the person who used to live with them but who wasn't living with them at the time of the birth, who learned about it apparently a year later. She says that she was born in the United States, also likely not admissible in a court of law. So what I understood the district court to have done is to say the government met its prima facie burden based upon the birth certificate. The proposed response, or rather the response from your client, was to submit three items of inadmissible testimony, and therefore the burden was not met. What am I missing? That's correct, Judge. So, Your Honor, so first, with the issue of the birth certificate, there's two birth certificates. First of all, the petitioner herself submitted a birth certificate which was registered in 2009. It was registered 17 years after she was born. Say that again, please. Yeah. So the petitioner at trial before the immigration judge submitted a birth certificate which was registered in 2009. She asserted that when she was in Guatemala, she got that birth certificate. She didn't use the word fraudulently, but she wanted to get married, and that's why she obtained that birth certificate. So I don't think that that is prima facie evidence that she was born in Guatemala. The government used the handwritten one that purported to be from, like, nine days after the birth or some number of days. Yeah, so that birth certificate, which was registered seven days after the birth, was an apostle birth certificate. Unfortunately, the person who would be in the position to best speak to that birth certificate is deceased. It was her mother who registered that birth certificate. Her grandmother. I'm sorry, her grandmother, who has since passed away. So if the burden then shifts to the petitioner to show through a preponderance of evidence, the petitioner's position is the declarations and oral testimony that was given in court through her grandmother should be sufficient to be able to. But you're a good lawyer, I'm sure. You know, if you were in the district court and somebody tried to offer what was offered here as evidence, you would object, would you not? This is inadmissible, Your Honor. There's no live testimony here. Nobody saw this. This was years later. There's just no live evidence. It's not reliable. It doesn't fit the rules. That's what I understand the district court to have done here. Nothing against your client, but it just says this evidence doesn't count. Yeah, so. What am I missing? The facts are what they are. So, Your Honor, as far as the evidence, you're correct. Wait, I'm sorry. You're agreeing with Judge Smith that this evidence is inadmissible? I thought you argued that there's a hearsay exception for family history 80319. I don't understand what's going on now. I'm arguing that the facts are the way that they are. What I'm arguing is that that evidence is still evidence in support of her proposition that she was, in fact, born in the United States. Okay, but Judge Smith is saying it's not because it's not even admissible. So I'm confused how you're responding to him. Oh, I see. No, I would argue that that evidence is, in fact, admissible. So I think you should give your arguments about why because that's what he was asking you, I think. Okay. Well, it was evidence by family members who had precipitate knowledge of what was happening at the time, although I understand they were present in the United States to witness the birth. I mean, they still had firsthand knowledge of the birth of the petitioner. And Ramirez, the friend, says she did have firsthand knowledge, right? Can you explain that? Yeah. Ramirez wrote a declaration specifically stating that she was in the hospital when the petitioner was born, and obviously that was submitted in immigration court, and I believe the district court had that as well. So can I ask about Ramirez? Because I had understood the district court to basically say Ramirez can't testify because she's scared to testify or whatever, so she's not coming, so we're going to treat her as not really counting here. And I don't see an argument in your opening brief about whether that was wrong. So I'm wondering if you forfeited Ramirez or what the status of Ramirez is at this point. Yeah, I wouldn't say that we forfeited Ramirez. I'm not sure the particulars as to why specifically she didn't want to come testify in court, but that declaration is already into evidence. It was in evidence before the immigration judge. It was in evidence before the Board of Immigration. So I believe that that still should be considered as evidence. It was already admitted. And so the court was wrong to disregard it. I believe so. But, again, correct me if I'm wrong.  You all didn't try to get her to come. There was no chance to cross-examine her. She had not lived in the house for over a year before the birth. Again, same kind of a problem. The family issue that my colleague refers to that you've got to have certain background on, and she wasn't in the house. She didn't live there when this child was born. It's all hearsay. It's all secondhand, right? It's secondhand, Your Honor, but, again, it is. Wait, I'm sorry. I thought the question was the question about Ramirez because Ramirez is not secondhand. Ramirez asserts that she was present at the birth, right? Correct. And, Your Honor, it was still a sworn affidavit under the penalty of perjury that was submitted. I wish I had more information as to the particulars as to why she didn't want to come testify before the district court. Unfortunately, I don't. But, again, it's still an affidavit by a witness. And do you think, I mean, if she were not to testify for whatever reason, or I suppose, is Ramirez present in the United States? At this moment, I believe she is. Okay. So if she were to be subpoenaed and for whatever reason refused to testify, could you introduce her declaration as that of an unavailable declarant concerning birth and family history? That would be the potential testimony. I'm sure the government would object to it. But, obviously, that would be the testimony because, unfortunately, that's the strongest evidence in support of her claim that she was actually born here. And, unfortunately, she was not available to testify before the district court. So that would be the position to submit her declaration into evidence even though she's not available to testify. Or are you also arguing, like, maybe she will change her mind and come if she's subpoenaed? That could be an option. Unfortunately, I wasn't the attorney who handled the matter at that level. But, I mean, if I was representing her going forward, I would urge her to do it because that is, by far, the strongest evidence she has in support of her claim that she was actually born here in the United States. Given the fact that she didn't testify, how do you satisfy the federal rules of evidence 804A? I'm not familiar with that rule I've had, Your Honor. Well, from my perspective, that does away with her testimony. I mean, the government tried to reach her repeatedly. She was not going to be found. But there was no occasion for her to testify so far in the proceedings, right? Because this is all on summary judgment. Correct, not until the district court. So we can make a projection of whether she would testify if there were to be a trial. But she hasn't been called upon to testify so far. Not that I'm aware of. The government tried to subpoena her, right? At the district court level, yes. Repeatedly. Correct. And she evaded that. Correct. So what do we do then with 804A? I guess that's why I struggle with the empathy for your client. But the information that came from Guatemala, clearly inadmissible testimony. They weren't even there. It's all hearsay. Ramirez is a closer question. But, again, who's going to be able to question her? And from my reading of the record, and I want you to correct me if I'm wrong, she essentially evaded being subpoenaed. You've got the affidavit came from her. Somebody talked to her in the family, and yet she wasn't willing to testify. How does that work? Correct. So, again, I would just have to rest on the position that she already submitted a sworn affidavit. And, again, I wish I had more details as to exactly why she didn't testify. But if I was the attorney at that level, I would have basically said she had to come and testify. But, okay, are you saying Ramirez is the only witness, or are you still saying the family member's testimony is also invalid? No, no, no. I think the family member's testimony should be taken into consideration. What I'm saying is Ramirez by far, obviously, is the strongest evidence that she was, in fact, born here in the United States. But if you only had the family members, would there still be a genuine dispute of fact here? It would be a close call. What do we do with the fact that? I mean, I guess I'm just very confused by what you're saying, because there's a hearsay exception for family members who know about a birth. The family members say we got a phone call from America saying she's born. I don't think that's inadmissible. I think it falls under the hearsay exception. I thought that was your argument. If those people's testimony is admittable, then there's a fact dispute. But now you're saying you're not sure. So I don't know where we are with this case, because I thought your argument in your brief was stronger than what you seem to be standing here and doing. So now I don't know what's going on. Yeah, so I'm not saying that the family member testimony should be discounted in any way. Again, what I'm saying is Ramirez's declaration is by far the strongest. I do think that the declarations by the family members should also be taken into consideration. What do we do with the fact that your client, when she originally entered the United States, said that she was a citizen of Guatemala? Okay, so there's a form called an I-213 form that's issued by the government officials at the border when she first comes in. The petitioner's best language is concable. There is nothing in that report that states the official who took that report was fluent in concable, let alone in Spanish. Concable is a Guatemalan dialect. There's very few people in this world who speak that dialect. So I think that's inherently unreliable, given the fact that her primary language is concable. So you think that the—you don't question it. That's what it says, that she said she was from Guatemala. You're saying she couldn't possibly have said that and been understood because she speaks a dialect that nobody else does. Is that your answer? Very few people do, correct. Okay. And then there's nothing in the report to indicate at all that she was questioned in her language. And have you asserted that as the basis for that not being counted? Yeah, the attorney that did the brief that tried the case in immigration court and before the board never asserted that. Okay, so is that waived? I don't think it's waived. It just was never brought up in the briefing. And the government never brought that up either as well. Okay, if it was never brought up, then arguably it's waived. So you've got her admitting, arguably, that she is a citizen who was born in a different country. The birth certificate says that's the case. You've got two aunts who weren't there. My colleague apparently feels that that's okay and it's admissible and you can take that into account. Then we've got the issue of Ramirez, who you talked about. It's a challenge. It's a difficult issue. Yes. I mean, obviously the birth certificate would be the best evidence. But, I mean, these are the facts. And, again, I would assert that the family member's affidavit should be taken into consideration. Do you want to save any? You don't have much time to save. Two minutes, Your Honor. Okay. What? Two minutes for Ramirez. Well, you want two minutes, but you haven't saved two minutes. Oh, correct. Yeah, you haven't saved it. Well, maybe give a little extra time. Let's see what the government has to say, okay? May it please the Court. Good morning, Your Honors. My name is Jonathan Ross and I represent the United States. In the below proceedings, the district court fulfilled its duty. It ascertained what evidence it had before it and it applied the correct burdens of proof to that evidence. Ultimately, it determined that the contemporaneous and uncontroverted Guatemalan birth certificate gave rise to a rebuttable presumption of alienage. And as the Court has already pointed out, in turn, Ms. Domingo presented evidence that needed to be not just a mere scintilla, but that needed to be substantial, credible evidence to support her burden to show that she was born in the United States, and she did not. Well, why? I mean, let's start with the declaration from Ramirez, right? So Ramirez says – I mean, there's a lot of reason to think that Ramirez is not telling the truth, right? But this is on summary judgment, and we have a declaration from somebody who says, you know, I was present and I witnessed the birth. How is that not substantial, credible evidence that she was born in the United States? Yes, Your Honor, and I want to address that fully. But I do have to stress, too, that in both primary briefing and in supplemental briefing, Ms. Domingo did not raise the issue, did not raise any contention about the district court's handling of Ms. Ramirez's testimony. So that is waived. Fair, but she did mention in the brief, like in her sort of recitation of the evidence that she had presented, she mentioned Ramirez. I mean, but you think that's not enough to preserve the claim that Ramirez's declaration constitutes substantial evidence? It's absolutely not, Your Honor. Merely mentioning Ms. Ramirez in the factual recitation isn't actually putting forward an argument that's required under the rules. And, again, the pivotal question is, did she actually make an argument pertaining to how the district court handled Ms. Ramirez's declaration? And she did not. So the Court should hold that that is waived on its face. But even moving to the substance of your question, again, she has to show more than a mere scintilla of evidence. And although Ms. Ramirez puts forward certain claims, the fact of the matter is the government made every attempt. Well, actually, let me back up just for a minute. Ms. Domingo herself never presented Ms. Ramirez as a witness. And the government tried every effort to try to ascertain her testimony. And she fought us. And what was it? You were trying to take a deposition? What was going on? Because it was summary judgment. So what were you trying to get her to do? That's correct. During the discovery stage of this case, our efforts at securing her testimony, including our communication with her counsel, to have Ms. Domingo make her witness available. Ramirez's counsel or Petitioner's counsel? Petitioner's counsel. Ms. Domingo, to make her witness available. Available for deposition, though? Available for what? I'm sorry? Available for deposition? Yes. And she was available and she was also within the court's subpoena power, which is what led the government to make those efforts. And that's contained in the record at SCR 115 through 124. But, again, Ms. Ramirez's testimony is a red herring in this case, because it still does not do anything to counter the evidence of, again, the contemporaneous and uncontroverted birth certificate evidence. Okay. The forfeiture issue is a serious one, but setting that aside for the moment. What better evidence could there be than a declaration from somebody who says, I personally witnessed this person being born in the United States. If that's not enough to counter a foreign birth certificate, whatever it could be. Again, Your Honor, the forfeiture is a big issue. But that wasn't evidence that the court could rely on, because Ms. Domingo did not make her witness available for cross-examination. Why is it? I mean, so if she's really unavailable, I mean, there is a 804b-4, says that when you have an unavailable declarant testifying about birth or family history, I mean, that's one of the exceptions where you can present a declaration from someone that seems to fall fairly squarely within that, doesn't it? What you're describing is really a hypothetical situation in which she actually participated in the proceedings. No, no, I'm describing the situation where she refuses to participate in the proceedings. She's not available, and 804 lets you put in an out-of-court declaration from somebody who's not there in certain circumstances, and this seems like it's one of them. But, Your Honor, under Rule 45 and all of the requirements, under the local rules of the Central District of California as well, you have to make your witness available. Or if someone was available and within the subpoena power of the court, they need to be able to be cross-examined to prove the veracity of what they're saying. Otherwise, someone could just put any statement in a declaration and say, well, I decline. Those were her exact words. I decline to participate, or at least communicate it through Ms. Domingo's counsel. I decline to participate in these proceedings because it's a federal action, and that's that. So setting aside Ramirez for the moment, what about the other relatives? The other relatives don't have first-hand knowledge. They're testifying about their reputation within the family, and isn't that allowed under 803.19? It is, Your Honor, yes. And what's important to look at is not only the foundation of that knowledge, but really the substance of that knowledge. And if you look at the statements submitted by the aunts and even the grandmother's testimony, that testimony specifically pertains to when Ms. Domingo came, arrived in San Pedro, Soloma. Don't they also say we got a phone call saying she was born in the United States when she was born? Yes, that is correct as well, yes. So that's hearsay? You know, the mom is, I'm at the hospital, my baby's born, I'm in the United States. It's hearsay, but there's hearsay exception for that. So why is that not admissible? Your Honor, it would be admissible. However, it still does not account for not only the birth certificate, the birth certificate evidence, the objective documentary evidence that's here in this case. I agree you have evidence to the contrary, but that's what a fact dispute is, right? That's when you don't get summary judgment. When there's evidence on both sides going in different directions, then you don't get summary judgment and you get a trial. What am I missing? Your Honor, the issue here is, especially in light of GIHA, I think GIHA is very illustrative to this situation because once the government has created, once the burden has shifted from the government to show alienage, and that burden rests on Ms. Domingo, she has to show substantial, credible evidence. And putting up these statements against this other objective evidence, evidence that Ms. Domingo herself concedes is, to use his exact words, it would be a close call. A close call is inherently not substantial, credible evidence. So can I ask a different question? So this case was before our court before, and our court said there's a fact dispute here, and that's why it remanded. Has anything changed about the record that made things less disputed than they were then? What has changed that would put us in a different position than the last panel? Absolutely. Everything. Everything has changed. Just like in GIHA, following remand by this court to the district court for a de novo review, we underwent a substantial period of discovery where both parties actively sought to build a record. And what facts did you learn that were different than what was known in the last round? In terms of the facts that were different, first and primarily is the substance of the birth certificate. Although Ms. Domingo submitted a birth certificate in immigration proceedings, through discovery we were actually able to get a contemporaneous birth certificate, which compared to the one that she submitted was a 2009 version. It's also a notable development in discovery that the 2009 birth certificate, she claimed that she ascertained it through, for lack of a better term, fraud, or to achieve some types of a means to an end, whereas the original contemporaneous birth certificate was just that. So that seems like further evidence on the government side, but if there was already evidence of a birth certificate in Guatemala and then the fact dispute arose from the evidence on her side, has something changed about the evidence on her side? No, Your Honor. It's the other way around. It's the contemporaneous birth certificate resolved any type of factual dispute. In summary judgment where the court makes all reasonable inferences in favor of the non-moving party, it would be very reasonable, hypothetically, for the district court judge to say, well, we have this 2009, assuming we only have the 2009 birth certificate. We have this 2009 birth certificate. However, Ms. Domingo has put forward an explanation as to why that document was created. She had to get it in order to get married. What changes completely is the discovery that there is actually a 1991 birth certificate or a 1990 birth certificate that is memorializing the fact that she was in Guatemala 17 days after her birth. So can I ask about that? So as I understand the handwriting, it says that someone, Juan Mateo, reported the birth. That was probably the grandmother, Juana Mateo Francisco? The government does not. There's no clear explanation into that, but that's not a genuine issue of material fact, whether it's Juan or Juana. We don't have an explanation for that, and Ms. Domingo never raised that as an issue. I mean, I thought that there's a notion here that the grandmother, well, the grandmother says she got a phone call that the baby's born in the United States. So why isn't it possible that this grandmother, who's basically the name on this handwritten thing, went and reported, you know, I have a granddaughter now, and maybe she thought they were right in the United States. I don't know. It doesn't seem like they're literate, this family, at least not very literate. Somehow they write she's born in Guatemala. Maybe there's a mistake. Maybe the grandmother thought she should say that the baby was born in Guatemala, so there's documentation that there's this baby. I mean, I don't know. But it's not so obvious what is going on here when the reporter isn't the mom or the hospital or the midwife. I mean, it's the grandmother, it seems like. Your Honor, these are all questions that Ms. Domingo was in the best position to assert before the district court or even, you know, belatedly upon appeal to this court. But to date she has never taken that position on any of these documents. And those arguments are all waived. But I think she must be saying this document isn't right, right, because she's saying she was born in the United States. No, Your Honor. The birth certificate is uncontroverted. Well, the existence of it. But she is, at least by implication, saying it's false. To the extent that it can be said that she's disputing it by implication, again, that was never something that she actually argued.  I mean, when she says I was born in the United States, doesn't that mean the birth certificate, she is saying that the birth certificate that says she was born in Guatemala is wrong? I don't think that the court can take that so liberally. She actually needs to provide specific challenges in order to challenge the document. Simply saying by implication, oh, well, I was born in the United States, so I'm not going to even address the fact that this document exists, she never did anything to try to. I don't understand. I'm sorry. What does it mean to challenge a document that says you were – if saying I was born in the United States isn't a challenge to a document that says you were born in Guatemala, what would it mean to challenge the document? Give me an example of how you might challenge the document. I think the examples are the ones that were just raised. Who is this person that's registering it? What is going on here? Is this a – do the dates line up? Do the parties line up? There are specific things that one could do to say that this document is not correct. I mean, she's challenging the specific thing that the place doesn't line up because the document says Guatemala and she's saying, no, it's actually the United States, right? But she's not being explicit. There's no explicit argument to that document. And, again, I understand the court's inquiry as to the implication. Well, I was born in the United States, allegedly. I was allegedly born in the United States. However, this document exists. But there's other evidence as well in the record that just further supports the – The truth is what you've really got here is a situation where, as my colleague has pointed out, our court previously determined there are some factual disputes here, sent it back. And yet you have, again, a summary judgment. There are still factual disputes. The government takes the position that what was put forward is either inadmissible or de minimis, doesn't meet the standard. But if it does, then we're back in the same position again where you need to move forward to a trial, right? Your Honor, so that – I agree with what you're saying. And if I can just specifically address that, this case lines up with GIHA. This is a case where the case transferred it to the district court, evidence was conducted, the government moved for summary judgment, and the district court granted that motion. This case is ripe for adjudication on – was ripe for adjudication on summary judgment because there is no genuine issue of material fact. The genuine issue is the genuine issue. And I think we've heard from my colleagues in particular that have raised questions about those – what those issues are. And if they're correct, then we have to send it back for trial, do we not? If those issues create a genuine issue of – are both material and genuine, then that would be appropriate. And if I can just have the court's indulgence to – We're over time. Let me ask my colleagues, does either have additional questions? I'm sure there's lots more we could talk about, but I think we'll have to end your argument at that. So thank you. Thank you. We'll give you a minute to respond. We gave you lots of extra time before, but please just give us a brief rebuttal, please. Just briefly, Your Honor. With respect to the GIA case, the first factor says before the burden shifts to the petitioner, the government has to show by clear, convincing, and unequivocal evidence that the petitioner is foreign-born. So with respect to the issue of the birth certificate that was issued 17 days after the petitioner was born, I don't believe that's clear and unequivocal evidence. Somebody went to register that birth certificate. There could have been a linear reason why they would have registered that birth certificate in Guatemala, even though the petitioner was not living there. She was able to register a birth certificate in 2009, so it doesn't seem like it's that difficult to get a birth certificate issued in Guatemala. So, again, my last point would be that the issuance of that birth certificate 17 days after the petitioner was born was not clear and unequivocal evidence that she was, in fact, born in Guatemala. Other questions? Thank you both for your argument. Thank you, Your Honor. We appreciate it. The case just argued is submitted.
judges: SMITH, FRIEDLAND, MILLER